# Brimner *v.* Reed, Appellant.

*Landlord and tenant—Injuries to cattle—Oil lease—Proximate and remote cause—Negligence.*

An owner of a farm leased it to another agreeing to keep the fences in good repair, and reserving the privilege " of leasing for oil, gas or coal, allowing the tenant damages for the same." The owner subsequently leased the land for oil and gas, and oil development was begun in one of the fields.   The tenant kept his cattle in a field fenced off from the one in which the operations for oil were being carried on.   In this field he provided an independent water supply for his cattle.   While plaintiff and his family were absent from the farm a number of cattle escaped from their field through bars and entered the field in which the oil well was being drilled. There was no evidence as to whether the bars were let down by an employee of the oil operator, or by a trespasser, or loosened from their place by the cattle.   No person saw the cattle drink at the stream in the oil field, but some cattle tracks were observed at the stream.   Some of the cattle which escaped from their field became sick and subsequently died. *Held,* that the landlord was not liable for the loss.

Argued April 21, 1903.   Appeal, No. 26, April T., 1903, by defendant, from judgment of C. P. Westmoreland Co., Feb. T., 1902, No. 145, on verdict for plaintiff in case of Edward F. Brimner v. David Reed.   Before Rice, P. J., Beaver, Orlady, Smith, W. D. Porter, Morrison and Henderson, JJ.   Reversed.

Assumpsit for loss of cattle.   Before Taylor, J.
The facts are stated in the opinion of the Superior Court.
The court refused binding instructions for defendant.
Verdict and judgment for $450.   Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*T. F. Birch,* with him *J. W. & A. Donnan,* for appellant.—A defendant cannot be held liable for consequential damages

where there is an intervening, independent cause of the injury, over which he has no control : Chartiers Twp. v. Phillips, 122 Pa. 601; Schaeffer v. Jackson Twp., 150 Pa. 145 ; Willis v. Armstrong Co., 183 Pa. 184 ; South Side Pass. Ry. Co. v. Trich, 117 Pa. 390 ; Jones v. Gilmore, 91 Pa. 310.

*M. H. Stevenson* with him *J. C. Ewing*, for appellee.—The case was for the jury : Scott v. Hunter, 46 Pa. 192 ; McMahon v. Field, L. R. 7 Q. B. Div. 591 ; Pittsburg v. Grier, 22 Pa. 54; Yoders v. Amwell Twp., 172 Pa. 447 ; Benson v. Maxwell, 105 Pa. 274; Ritter v. Sieger, 105 Pa. 400; Hoffman v. Bloomsburg, etc., R. R. Co., 143 Pa. 503.

OPINION BY ORLADY, J., October 5, 1903 :

The defendant owned a farm which he leased to the plaintiff to be used for dairy purposes. The important clause in the lease is as follows : " The first party (Reed) agrees to keep the fences in good repair, to protect second party's (Brimmer) crops ; if the first party fails to do the repairing, the second party does it at the expense of the first party. The party of the first part reserves the privilege of leasing for oil, gas, or coal, allowing second party damages for the same." After Brimmer entered into possession of the premises, as alleged in the plaintiff's statement, " in pursuance of said reserved right, defendant leased said land for oil and gas, and in the month of August or September, 1901, drilled, or caused to be drilled, a well on said land in search of oil or gas. By reason of the drilling of said well the water and pasture in one of the fields on said farm, to wit: a field containing about thirty-five acres, and in which said well was drilled, was so impregnated and tainted by salt water and other injurious materials and gases issuing from said well that plaintiff was unable to make any use of the said field and was deprived of an adequate supply of water and pasture for his dairy stock, the same being essential to the successful operation of a dairy farm and not being obtainable on any other part of said farm. By reason of said field being unfit for use on account of said oil well and operations connected therewith, plaintiff was obliged to keep his stock in other fields. On the 17th day of September, 1900, in plaintiff's absence from home, the bars between said field and the

field in which plaintiff kept his cows were let down by persons working in and about said well and fifteen of plaintiff's cows were allowed to enter the field in which said well was being drilled, and to eat of the pasture and drink of the water which had been poisoned and polluted by the salt water and other noxious liquids, gases, and substances issuing from said well. By reason whereof the said cows, all being of great value, were made sick and were much depreciated in value, and seven of them died."

The plaintiff was in possession of the whole farm, and when the oil operation was begun under the reservation in the lease, the risk of permitting the cattle to be in that field was apparent to him ; he attempted to protect them from it by confining them in another field and providing an independent water supply for their use, but it was a risk to be expected from the proper exercise of the right of the owner to lease the land for oil development. The lease provided, and the plaintiff admits having this contingency in mind at the time the lease was signed ; and that, if exercised, he would be deprived of the use of a part of the farm ; and further, that he knew that it was not safe for cattle to be about such an operation. The cattle were confined by the plaintiff in a fenced field, the exit from which being through a set of bars consisting of two horizontal bars between two upright posts, and while the plaintiff and his family were absent from the farm the fifteen head of cattle escaped from their field and entered the field in which the oil well was being drilled and from thence into an adjacent corn field. On the plaintiff's return he discovered that some of the cattle were sick, and within two days seven of them died. There was no evidence to show how or by whom the bars were removed from their place in the posts. The direct cause of the death of the cattle was not shown. No person saw them drink of the water. The nearest approach to this vital point was that some cattle tracks were observed at the stream, but whether these were made by the seven cattle which died or by the eight others does not appear.

There was evidence which would have justified the jury in finding that their death was caused by eating green or musty corn in an adjacent field, but, assuming that the death of the

cattle was due to their drinking water of the stream which had been impregnated with salt and other deleterious matters from the oil well, the defendant is not in any way connected with the cause which induced or permitted the cattle to get to the stream, and it is not questioned that the oil operation was conducted in a careful and proper manner and that everything in and about that enterprise was done in the usual and ordinary manner adopted in the prosecution of such work.

The pollution of the stream was a natural and necessary result of drilling and operating an oil well, and there was no undertaking on the part of the defendant to pay or allow for damages that were caused by the negligence of the employees of the oil operator, or by third parties over whom he had no control, or by an intervening independent agency.

Whether the bars were let down by an employee of the oil operator, or by a trespasser, or loosened from their place by the cattle is not shown. The cause of the injury is too remote and the evidence too meagre and uncertain to sustain a verdict. The defendant was entitled to the instruction prayed for in his third point, and that is the only assignment of error considered.

The judgment is reversed.